The next case this morning is 522-0818, Fletcher, etc. v. Flynn, et al. Arguing for the appellant is Michael Franz. Arguing for the appellee is Edward Ebersbacher. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, gentlemen, and good morning to our non-video participants. Mr. Franz, you're for the appellant in this case? Yes, Your Honor. Good morning. Would you like to begin? Thank you, Your Honor. Good morning, Justices. Good morning, Counsel. Good morning. Plaintiff recognizes that overturning a jury verdict is an extraordinary relief. In this case, extraordinary relief is warranted. Plaintiff made five claims of legal malpractice against defendant in this case and would agree, as stated in defendant's brief, that in three of the five claims of malpractice, there was a factual dispute that required the jury to assess the credibility of the witnesses. However, in two of the claims of malpractice, there was no factual dispute for the jury to assess any credibility whatsoever. Those are the issues raised in appellant's brief, the failure to advise the plaintiff to incorporate, and the failure to investigate an easement on the property. Now, I'll start with failure to advise, and I want to highlight two words here, because these two words are crucial to what was done or what was not done. And those words are discuss and advise. Let me stop you for one second, if I may. With regard to your statement that these did not require any credibility determinations, how is that so when there was conflicting testimony as to when and what was said to each other with regard to those things? And one side said, no, I didn't hear that, you know, I was never told that, or I responded in this way. How is there not a credibility issue in those? Well, on the first issue, Justice, there was conflicting testimony on whether or not the plaintiff discussed the issue of incorporation with the defendant attorney. But there is no conflicting testimony that the defendant attorney advised the plaintiff. In fact, the only testimony and the only evidence heard by the jury was that the defendant did not advise plaintiff to incorporate. Wasn't the testimony at one point something along the lines of, we've discussed this, give this some consideration and get back to me? Yes. So you're suggesting that is not in any way it could not be construed as, hey, I've told you why we should do this. Give it some thought. And it wasn't the necessary language in that discussion saying this is what I advise you to do, because I think there was something in one of the briefs, probably not yours, but probably in the other sides suggesting that there was the jury could have construed that conversation as to mean I've given you my advice. Give it some thought and let me know what you think. Well, using your words, Justice, defendant did not give any advice. So the jury could not even assess the credibility of witnesses because the defendant's own testimony was, and I'm quoting from the supplemental record, page 845. I didn't tell him he should incorporate. That's correct. That was an answer or response to my question. So to be clear, you offered no opinion as to whether or not he should incorporate. Correct? And the response, again, I didn't tell him he should incorporate. That's correct. So, again, focusing on those two words, discuss and advise, there's clearly a question as far as whether a discussion had. No doubt. But there is no question whatsoever as to whether the defendant advised the plaintiff on whether or not to incorporate. He did not. His own testimony was, I did not advise the plaintiff to incorporate. Moving on. Is it your position that because he did not advise the plaintiff to incorporate that that proximately caused the damages in this case? Yes. What was the proximate cause? If the plaintiff would have been incorporated, all the resulting damages he had from this land development would have been prevented to him individually. But didn't he? Correct me if I'm wrong. Didn't he testify that he ultimately won all of the lawsuits filed against him by the homeowners association? It was one lawsuit, and he did testify to that, but he had several consequential damages resulting from those lawsuits. And, in fact, he has damages today that he still incurs. Can you just very briefly just kind of give us a rundown of what those are? Well, for one, he had all of his attorney's fees defending himself against the homeowners association. He had. But there was testimony he would have had to have paid that anyway, right? Well, that's a theory promoted by the defendant, but the plaintiff could have made the choice. Let's just say that he had incorporated. He could have made the choice to not bear those expenses and walk away from the property if it was just an LLC. He could have made that choice, and he never had the opportunity to make that choice because he was never advised to incorporate. I'm sorry. Go ahead, Justice Cates. He sold the property for $2 million? No, Justice, he has not sold the property. He has not sold the property? He did sell a portion. He sold several lots that he owned. He owned the entire property, of course, at the beginning as the developer. He has sold several lots thereafter. Didn't he sell some to his sister? He did. So what's been his total revenue generated off this property? Well, quite honestly, I can't give you that number right now. I don't recall off the top of my head what his total revenue is. Okay, somewhere in the briefs I picked up the fact that he's sold part of his development for approximately $2 million. It doesn't seem to me he'd walk away from that for attorney fees. Well, to say that he sold it for $2 million doesn't take into account his expenses, his development expenses, laying out all the infrastructure for the property, all the things he had to do to put the property in a position to sell a single lot. Going back to my original question, you've given me he had HOA attorney fees to defend himself. What is the proximate cause of him not incorporating? I mean, he could have chosen not to incorporate even if he had been advised to do so. He could have made that choice, but he was never given that choice. He was never advised by his attorney to do so. Well, he was certainly told, at least by one party, about incorporating and think about it and get back to me. Do you dispute that at all? Well, Dr. Fletcher's testimony is that they never had a discussion whatsoever. Mr. Flynn's testimony is that a discussion happened. What I am saying is the fact that that discussion happened, and I'll take you back to those two words, discuss and advise. By Mr. Flynn's own testimony, he never advised. The standard of care and the expert witnesses, and not only plaintiff's expert witness, Mr. Flynn's expert witness testified that he should have advised on the subject. So is there any significance that I'm sure, and I apologize if I mispronounce his name, Mr. Eberspacher is going to probably bring up with regard to your client's sophistication as a business person, having incorporated several businesses already, one being within months of starting this development project. Is there any significance to that? No, there is none, because one, he's not an attorney, and expecting just because he's a doctor. No, I'm not saying any of that. I'm saying that he's already gone through incorporating businesses and presumably would understand why he did those other businesses that way. Is that different than someone who is completely new to the whole process and had never incorporated anything and perhaps couldn't say, I didn't know anything, I didn't know what the advantages or disadvantages would be? And again, taking into account, my question perhaps presumes that there was a discussion, as you point out, a discussion, perhaps not a recommendation or advisement, but a discussion about it for him to consider and get back to him. With the fact that he has already been involved in preparing business or setting up businesses and corporations, is there any significance there? There is. Well, there's none. And here's why. Because the only evidence heard by the jury was from Mr. Lubkow on that issue. And Mr. Lubkow testified that just because the plaintiff had incorporated some other businesses, that it doesn't mean that he should have known that he should incorporate this development. Right. But wasn't there jury instructions involving common sense of the jurors? There was. And wouldn't you admit that the common sense of jurors, 12 of them at least, one of those jurors would have discussed this fact that, hey, this guy already knew about incorporation. And if we get into the credibility issue and believe that there was a discussion, he clearly was fully informed. He clearly had a full understanding of what the advantage of incorporating this business would be and chose not to do it. That would, I would agree, that would come into play if Mr. Flynn had advised Dr. Fletcher to incorporate. Okay. Then the contributory negligence argument would have validity. But that's not the evidence the jury heard. So you're saying regardless of who it is, if it's Donald Trump on the other side of this deal, if the lawyer doesn't tell Donald Trump that you should incorporate this business, and then it doesn't matter what Donald Trump's prior experience was in business, given the fact that the jury was instructed that they can use their common sense as to what transpired in this whole ordeal. No, I'm not saying that. I'm not saying that. But the, obviously not. But the evidence that this jury heard was that this was Dr. Fletcher's very first time that he delved into real estate development. I understand that. Okay. And there was nothing contradicting that. Nothing whatsoever. So incorporating a medical practice is a far different proposition. And this was testified to by Kevin Lukow was a far different proposition than incorporating a real estate development. Clearly. And I'll take you to the testimony. First of all, Mr. Flynn would offer no testimony whatsoever as to whether or not he should have advised Dr. Fletcher. He refused. And then his own disclosed expert who was withdrawn, but still the jury still heard his video evidence testimony testified. And here's my question. If a prudent course of action would be to form a corporate entity for a real estate development, would legal counsel typically advise a client of that fact or advise a client if they are not taking the prudent course of action by failing to incorporate? Answer. Generally speaking, at some time during the course of the transaction, yes, they should. And he also stated, I would have made a recommendation that they protect themselves with some sort of corporate entity that is defendants disclosed expert witnesses testimony. So, Mr. France, let me change horses on you a little bit. I want to talk about the easement because that's something that your client clearly knew about. There's no dispute on that. Right. Agreed. In this instance, one of the allegations you have is the failure to investigate the easement was malpractice. Right. Correct. This was a 50 percent contributory negligence case. It was. So couldn't it have been that the jury could have found that your client was more than 50 percent negligent for failure of his own to investigate the easement? Perhaps they could have if defendants would have had some witness testify that Dr. Fletcher should have looked into it on his own accord. But they never heard any evidence as to that. Well, the fact that he knew about it and looking at what Justice Barbaros is saying, using your own common sense. It seems to me that a jury could find your your client would be 51 percent contributory negligent for not further investigating it even before he hired an attorney. Well, the fact that Dr. Fletcher knew about it actually highlights the malpractice because Dr. Fletcher sends that we know of at least two emails, which the jury saw to the property engineer and the property attorney, Mr. Flynn, where he informs them about the easement and essentially says, hey, please look into this issue. I need to know if this is a problem. So you've kind of admitted my point. Didn't he hire an engineer and the engineer told him to get a lawyer? He did. He did. And also the testimony that the jury heard was from another engineer and the other engineer said it's not for a property engineer to investigate the implications of an easement. Sure, an engineer can investigate as to the existence of an easement, but not as to the legal implications, i.e. the restrictions on building, thus the restrictions on the development itself. That was testimony from a property engineer. Didn't your client know the implications of the easement once the plat was laid out and he saw that there couldn't be access to certain lots? No, no, he didn't. Why not? That goes into one of the other allegations of malpractice, which is not subject to the appeal, which I do think that there was a question for the jury to determine on credibility. That was allegations that the plat itself was inaccurate and that the attorney had a duty and responsibility with regards to that. Okay, that's not on appeal before us. That is not on appeal. All right, I see your time is out. Justice Moore, any questions? No questions. Justice Barberis, any further questions? Not at this time, thank you. Okay, Mr. Eberspacher? Thank you, Justice Cates. May it please the court. My name is Edward Eberspacher on behalf of the defendant, Ed Flynn and his law firm. It hasn't been mentioned today. It's certainly laid out in the briefs, but I think that we need to start from the position of the standard review in this case, which is contrary to the manifest weight of the evidence. And our courts have described that standard in part that the opposite conclusion is readily apparent. And in this particular case, we have set forth in our opposition brief relative to the incorporation issue, at least five different scenarios for the jury's verdict, all supported by the evidence and all reasonable based on the evidence. Similarly, in connection with the research and investigation of the pipeline easement issue, defendants here have set forth at least four different scenarios for the jury's verdict, each supported by the evidence and entirely reasonable based on the evidence. Relative to those two theories, Justices, my friend on the other side focuses exclusively on one, perhaps two elements of a legal malpractice claim while largely ignoring the others. The fact that an attorney may have breached the standard of care does not in itself constitute malpractice sufficient to sustain a cause of action. Attorneys breached the standard of care in this state and throughout the states in this union every single day. That does not mean that they committed legal malpractice. And I think it's perhaps easiest to understand that concept by giving a couple of examples. So turning to the issue of failure to advise to incorporate, my friend on the other side, his argument relates to the question of duty. That's his focus. The only testimony, the only evidence, the only expert that the jury heard from indicated that there was a duty to advise as to the need to incorporate the development. But in making that argument, Justices, respectfully, he ignores breach. Mr. Flynn testified that he discussed the incorporation issue with the plaintiff. I think the specific language and evidence the jury heard was you should think about incorporating. So there is absolutely a genuine issue of material fact left to the jury to consider the credibility of the witnesses as to whether there was breach. Even assuming that there was duty, assuming that the jury could ignore IPI 3.08, that it's specifically instructed then that they're not required to accept the opinion and testimony of plaintiff's expert. Assume there was a duty to advise. There was disputed evidence that he was advised. Also relates to the question of proximate cause. There was evidence from the plaintiff at trial that he was aware of the risks attendant to running a business. There was testimony from the plaintiff that he incorporated at least three other businesses around the same time that he sought legal advice and counsel from Mr. Flynn. There was testimony from the plaintiff that he was actually aware of risks specifically in connection with the woodbine development. There was testimony that he was aware that someone had drowned on one of the water bodies at the property. There is also, again, my friend on the other side is ignoring the damages question. He indicates I was injured by not incorporating, but the testimony in the undisputed evidence was that he prevailed in the lawsuit filed by the homeowners association against him. There was no liability assessed defense for Dr. Fletcher. There's this question of attorney's fees. The evidence at trial from Dr. Fletcher was that he would have paid an attorney to defend the corporate entity had he incorporated. So where are the damages? Where are the proximately caused damages? We are focusing, the plaintiff, my friend on the other side, is focusing on the question of duty. But even assuming that there was a duty, there was contested testimony and evidence on the other three required elements of the claim. And the jury was absolutely free to consider those other elements, use their common sense, and say that the supposed failure to advise to incorporate didn't proximately cause the plaintiff any damages. Another example, looking at the issue with respect to investigating the pipeline easement. Again, my friend on the other side is focusing on only two of the four required elements of the claim. Plaintiff is focusing on the elements of duty and breach. The argument is the uncontested evidence was that there was a duty to investigate the easement and that the defendants breached that duty by not investigating. But what about proximate cause? What about damages? Let's look at the evidence with respect to proximate cause. Plaintiff testified that he knew of the existence of the pipeline easement dating back to 1991 when he first acquired the property. The plaintiff testified that he himself, before ever retaining Mr. Flynn or his firm, contacted the pipeline easement to determine exactly what the boundaries of that easement were. Entered into evidence at trial, which the jury considered, was a letter from Panhandle Eastern Pipeline Easement specifically defining what the boundaries of that easement were, and specifically advising the plaintiff that he was not allowed to construct a home, a road, dig a ditch, or do anything else within the boundaries of that easement. Plaintiff testified that he knew in 2003, before he ever retained the defendants, that he could not build over the pipeline or within the easement holder's boundaries. The only question by the time the plaintiff hired Mr. Flynn was whether or not there was sufficient footage over the pipeline easement boundaries to build. But the plaintiff's own expert witness testified that the question of buildability is not an attorney question, it's a question for the engineer. Mr. Cochran also testified at trial. He was the land surveyor and engineer hired on the Woodbine project. He testified that the question of buildability was an engineer question and not a lawyer question. He testified that he walked the northwest section of the Woodbine property where the pipeline easement laid and specifically pointed it out to the plaintiff. Those are proximate cause questions. This supposed failure to investigate what the plaintiff already knew, a jury could use common sense and say, didn't proximately cause Dr. Fletcher any damages. There's also a damages question. And Justice Cates, I think you hit the nail on the head. Plaintiff sold lots in phase one and the evidence at trial was that the combined sale price of those lots was over $2 million. At the same time, the jury heard evidence and reviewed documentation as exhibits that the total development costs was significantly less than $2 million. In other words, the evidence that the jury heard at trial was that this was a profitable development for the plaintiff, that he made money on it. And the jury was free to consider the common sense jury instruction and say, we're not going to believe the plaintiff when he testifies that if he knew he couldn't build on three out of 48 lots, that he never would have gone forward with the development when the evidence was that he made a bunch of money when he went forward with the development, even excluding those three lots. In other words, to simplify what I think my friend on the other side is missing in his argument, the existence of a duty does not equal a verdict for the plaintiff. The breach of a standard of care does not equal a verdict for the plaintiff. In order for the jury to render a verdict for the plaintiff, he must show duty, breach, proximate cause, and damages. And he has, with all due respect, ignored the latter two of those elements for purposes of this appeal. We haven't gotten to the question of contributory negligence and comparative fault. Defendants set forth a number of affirmative defenses, including that the negligence of other third parties was the cause of the plaintiff's losses to the extent they existed. That the plaintiff's own contributory negligence was the cause of any losses that he claimed to have suffered. The existence and availability of that affirmative defense was never challenged by the plaintiff in the trial court below. That affirmative defense and the evidence adduced at trial was that Mr. Flynn, at the very outset of his retention on the Woodbine development, not only raised the issue of incorporation that the plaintiff was very familiar with, but that he also gave him some additional advice. He said, you're a novice developer. You're saying you haven't done this before. My advice to you, my legal advice to you, plaintiff, is to partner up with somebody who's got some experience. You don't want to do that? My advice to you is to sell this development. He ignored that advice. He proceeded anyway. And the jury was free to consider that and consider our affirmative defense of contributory negligence. You contacted the pipeline company. You knew what the easement was. You knew about this easement in 1991 when you purchased the property. You ignored the defendant's advice and you went forward anyway. You're more than 50% contributory at fault. You knew how to incorporate. You incorporated three other businesses. One of those businesses you incorporated within months of hiring Mr. Flynn. You testified at trial that you knew of the ability to incorporate. You knew of the risks of not incorporated, and you knew specifically of risks associated with this woodbine development. And you didn't do it anyway. No one disputes that the transcript of proceedings during the direct examination of Mr. Flynn was that he had a conversation with Dr. Fletcher, that he suggested to him that he consider the alternative paths of incorporating the development or not. He described to him what other developers in the Macon County area do. Some incorporate, some don't, and that the plaintiff should think about that issue, given all of his experience incorporating other businesses, and get back to him. And the jury was free to consider that and say, you know what, you didn't get back to him. You proceeded anyway, and you're contributory negligent for making that decision. We can't look at one or two elements of a legal malpractice claim in a vacuum. We have to consider the totality of the cause of action. And that's what's missing from today's argument from my friend on the other side. That's what's missing from his motion for judgment notwithstanding the verdict in the trial court below. That's what's missing in his appellate brief filed with this court. That's what was missing from the evidence at trial. And that's why the jury's verdict in favor of the defendant was not against the manifest weight of the evidence. What has happened here is the plaintiff has effectively cherry-picked what was most favorable evidence to the plaintiff, and effectively ignored the evidence that was most favorable to Mr. Flynn and his law firm. The standard of review obligates this court to view the evidence in the light most favorable to Mr. Flynn and to his firm. And when it does that, I think that this court can easily surmise multiple scenarios in which the jury's not guilty verdict makes perfect sense. We've set forth five examples on the incorporation issue. We set forth four examples on the pipeline easement issue. And I think that when it does that, it can pick any one of those scenarios and affirm. What the plaintiff is really asking this court to do is second-guess the jury. You know, this case had a unique procedural history. It dates back to the filing of the original complaint in 2009, with a refiling in 2010, and a transfer in 2011 from Champaign to Macon County. And over the course of more than a decade, 11 years of litigation following transfer to jury trial, the plaintiff's causes of action changed. They shifted. They raised unique issues. But for purposes of this appeal, the plaintiff is only attacking two of those theories. And under both the incorporation theory as well as the pipeline easement theory, there are multiple avenues that are supported by the evidence for the jury's verdict to be affirmed. It is not, respectfully, the job of this court on appeal to second-guess that verdict, given the credibility determinations and the inconsistent evidence giving rise to myriad genuine issues of material fact that the jury was charged with deciding. The jury's verdict was neither unreasonable nor arbitrary, and we respectfully request that this court affirm. Okay. Thank you, Mr. Eberspacher. I do hope that attorneys do not commit a breach of the standard of care every day in the state, as you suggested. But I do understand your argument on duty, breach, proximate cause, and damages. Justice Moore, any questions? No questions. Justice Barberis? No, thank you. All right. Mr. France, rebuttal? Thank you. First of all, counsel stated that this was a profitable business venture. Nowhere in the trial record will you find any evidence or testimony that Dr. Fletcher made a profit from this business venture. In fact, the only testimony you will find is that he suffered significant losses from this venture. I don't know where counsel or what counsel is referring to, but it is not in the trial record. This was not a profitable enterprise. In fact, the plaintiff lost millions of dollars as a result of this enterprise. Is it in the record that he lost millions of dollars? He testified as to his losses. Yes, he did. Yes, he did. Okay. What was his testimony? Because I don't recall that. Dr. Fletcher went through several areas of damages that he sustained from the property. That were approximately caused by the failure to advise? Several of which, yes. Not all damages, I would say, were approximately caused by the failure to advise. However, if Dr. Fletcher had been incorporated, he wouldn't have had those losses individually. But you can't list them today? Other than the attorney fees? I could tell you. Operational costs of the association that he bore. Paying insurance and taxes costs on behalf of the association that he bore. As a result, he bore individually. Which, had he been incorporated, he would not have to have done. There are several. Dr. Fletcher testified as to several damages which he could have avoided if he had been incorporated. Those are just a few. As far as the easement issues, I agree with counsel. It's not in dispute that Dr. Fletcher knew of the easement. In fact, he pointed it out to Mr. Flynn and to his property engineer. Hey, there's an easement running through this property. Counsel spent a lot of time today and a lot of time in his brief talking about Dr. Fletcher's knowledge. Never has been contested whatsoever. But what Dr. Fletcher didn't know is the implications on building. Now, counsel pointed out a letter from the pipeline giving direction on, well, you can't do this or you can't do that. That's not the same. The pipeline saying, hey, you can't build within 100 feet of this easement. That's not the same as those statements being legally and factually correct. Dr. Fletcher asked his attorney to look into the issue for one to see if those statements are correct. Just because a pipeline says it is doesn't make it so. And the easement itself was entered into evidence and the easement itself does not have any descriptions and boundaries. So what it took was an attorney to look into. And again, referring to the experts, Mr. Frizzell, defendant's expert, testifies that, yes, you should look into the easements on a property before you develop it. Plaintiff's expert testifies as to the same thing. Should have been looked into. The engineering expert testifies that the implications, not the existence of an easement, the implications of an easement is a legal question for a lawyer to look into, not for a property engineer to look into. And then taking us to the contributory negligence argument. When a property engineer says, I don't look into the legal implications of an easement, that surely tells you that a doctor doesn't have the requisite knowledge to look into the legal implications of an easement. But all this aside, the jury never heard any arguments from the defendants on this. None whatsoever. They withdrew Mr. Frizzell and his testimony was only damaging on the easement issue. It certainly didn't help the defendants. And they only heard testimony from Dr. Fletcher. Again, they heard testimony from Mr. Flynn. Mr. Flynn wouldn't give an opinion. Mr. Flynn, did you have an obligation to look into the easement? His response is, I have no opinion on that. And he has no witness saying he had no obligation to look into the implications of the easement. No witness said that. Counsel used the words missing and cherry-picked. And I'll submit to you what they've done in their argument is they have omitted and back to the failure to incorporate. And those two words, discuss and advise, they make a great argument on discussion. And I concede that. The jury heard evidence that they could have decided against Dr. Fletcher on the issue of discussion. But discussion wasn't the standard. It isn't the standard. Advise. And they heard from the defendant's own mouth. I did not advise. I didn't tell him he should incorporate. Mr. Frantz, and you've made that argument during your opening statement. Would you like to make a concluding statement? Yes, I would. Based on the evidence, reasonable minds could not differ on the inferences or conclusions drawn from that evidence on the two issues, incorporation and the easement issue. The jury's verdict on the incorporation and pipeline easement issues was unreasonable and against the manifest way to the evidence. Thus, the verdict should be set aside on those two issues. Thank you. Okay. Thank you. Are you sitting in Chicago? I am. I recognize the buildings behind you. Wow. Okay.  No questions. Justice Barberas. Thank you. All right. Gentlemen, thank you for your arguments here today. We'll take this matter under advisement and we'll issue an order in due course.